## UNITED STATES
## FEDERAL DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**JANNAH HAGUE,**

       Plaintiff,

                             **CASE NO**:

-vs-

                             **HON**:

**KENT COUNTY**, a Michigan
Municipal Organization, **KENT COUNTY**
**SHERRIF'S OFFICE**, a division of Kent County,
**MICHELLE LAJOYE- YOUNG**, Kent County
Sheriff, in her individual and official capacity,
Jointly and severally,

       Defendants.

---

**CAIR-MI LEGAL FUND**
BY: Amy V. Doukoure (P80461)
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

---

### COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE REILEF

    **NOW COMES,** Plaintiff, Jannah Hague, by and through her counsel, Council

on American Islamic Relations- Legal Fund (CAIR-MI Legal Fund), by Amy V.

Doukoure, against Defendants, Kenty County, Kent County Sheriff's Office and

Michelle LaJoye-Young, jointly and severally and for damages and declaratory and

injunctive relief to enjoin all Defendants from implementing the Photograph Policy requiring the removal of all religious wear, for the substantial burden on religious practice that is directly prohibited by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.§ 2000cc et seq. ("RLUPIA"), violations of the Michigan Constitution Article I §4, and violations of Ms. Hague's civil rights while acting under the color of law in violation of 42 U.S.C. §1983 committed by all Defendants when (1) Ms. Hague was forcefully required to remove her religious headwear to take a Booking Photograph in the presence of male staff, (2) Ms. Hague's hijabless booking photo was uploaded to Kent County Sheriff's public website, and (3) Ms. Hague's Booking Photograph was disseminated by Defendants to other databases within state and local law enforcement which presents the reasonable risk of further public dissemination and continued civil rights violations.

## **JURISDICTION AND VENUE**

1. This Court has original federal question jurisdiction over Plaintiff's claims of violation of the United States Constitution and Religious Land use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.§2000cc et seq., pursuant to 28 U.S.C. §1331.

2. This Court has federal question jurisdiction, pursuant to 28 U.S.C. §1343 over Plaintiffs' claims regarding the deprivation under the color of State Law of rights

secured by the First and Fourteenth Amendments to the Constitution of the United States and the laws of the United States.

3.  This Court has supplemental jurisdiction over Plaintiff's State Law claims, pursuant to 28 U.S.C. §1367.

4.  This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Michigan.

5.  This Court has jurisdiction over Plaintiff's Constitutional claims pursuant to 42 U.S.C. §1983.

6.  Plaintiff's claims for declaratory relief are sought under 28 U.S.C. §§ 2201 and 2202.

7.  Plaintiff seeks permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §1343.

8.  Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. §1983 and RLUIPA.

9.  Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

10. Venue is proper under 42 U.S.C. §1391 as to all Defendants because the proposed site is located within this District, and the acts described herein occurred within this District.

## THE PARTIES

11. Plaintiff, Jannah Hague, is an individual, a practicing Muslim woman, who wears the Islamic headscarf known as hijab as part of her sincerely held religious beliefs and practices.

12. Defendant, Kent County is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of Michigan. Whose principal place of business is located in Grand Rapids, Kent County, Michigan.

13. Defendant, Kent County Sheriff's Office, is a political subdivision of the Defendant Kent County, whose principal place of business is located in Grand Rapids, Kent County, Michigan.

14. Defendant, Michelle LaJoye-Young, is the highest level official at the Kent County Sheriff's Office. She holds the position of Kent County Sheriff and her principal place of business is Grand Rapids, Kent County, Michigan.

## JURY DEMAND

15. Plaintiff demands a trial by jury in this action.

## GENERAL FACTUAL ALLEGATIONS

1.  This case is about the Kent County Sheriff's Office's booking photograph policy that through a pattern and practice is enforced at the Kent County Jail which violates the First Amendment as well as other federal and state law. Through its policy, pattern and practice, Kent County Sheriff's Office arrestees who wear religious head coverings to remove those head coverings for a photograph, even where doing so violates the arrestees' sincerely-held religious beliefs. This practice alienates and oppresses faith communities throughout Kent County. It lacks justification and must be changed.

***The Hijab***

16. Ms. Hague wears a hijab pursuant to her Muslim faith. For the purposes of discussing the Defendants' policy, the term "hijab" is used throughout this complaint to refer to a garment worn by many Muslim women in various parts of the world; it is a headscarf that covers the wearer's hair, ears, and neck, and frequently part of her chest, but leaves her entire face exposed. In Arabic, the word "hijab" derives from the word "hajaba," sometimes translated as to hide or screen from view or to cover. Wearing a hijab is also known as "covering." Ms. Hague does not wear a niqab, or a face veil.

17. For many observant Muslim women, the practice of covering entails wearing one's hijab at all times, whether at home or in public, when the wearer is in the presence of men who are not part of her immediate family ("mahram").

18. While women choose to wear the hijab for an array of reasons, many believe that the hijab fulfills the commandments of modesty and devotion that stem from, among other things, the Qu'ran, the primary holy book of the Muslim faith, and the hadith, the oral traditions carried down from the age of the Prophet Mohammed (S.A.W.). Ms. Hague, and other women who cover frequently, view wearing the hijab as a mandatory aspect of Muslim identity and faith.

19. Ms. Hague wears the hijab because her their faith dictates that no man outside of a woman's mahram should see her uncovered hair, head, and neck. Ms. Hague presently wears hijab every single day and believes that her religious faith requires her to do so. Ms. Hague has covered regularly for years. Ms. Hague's hijab is core to her identity, and it is an essential part of who she is.

20. Being forced to remove one's hijab in public, particularly in the presence of men who do not belong to the wearer's mahram, is a profound defilement of the wearer's sincerely-held religious beliefs and a violation of her religious practice. Requiring a Muslim woman to remove her hijab in public is akin to demanding that a secular person strip naked in front of strangers.

### The Kent County Sheriff's Office's Unlawful Booking Photograph Policy

21. Kent County Sheriff Office's photograph policy (the "Policy") which was enacted in April 2022, requires that a person who is wearing a head covering

pursuant to a sincerely held religious belief, must remove their head covering for a booking photograph.

22. According to the Policy, two photographs are taken of each individual whom wears a religious head covering, one with the head covering and one without.

23. The image with the head covering is intended to be released to the public via Kent County Sheriff's Office public detainee website. This website is accessible to the general public, for free.

24. The image without the head covering is intended to be held by the Kent County Sheriff's Office, where currently there are no restrictions on within their agency may view the photograph.

25. Additionally, the image without the religious head covering is uploaded to the Michigan State Police Database where:

    a.  It becomes a permanent public record;

    b.  It can be viewed by any employee of the Michigan State Police who may have access to the data base;

    c.  It can be disclosed pursuant to Michigan's Freedom of Information Act;

    d.  It can be disclosed to other law enforcement agencies.

26. Additional policies related to taking booking photographs include the fact that multiple officers are required to be present during the booking process, including when a detainee is forced to remove their head covering for a photograph.

27. Defendant's policy unreasonably requires the explicit and unconditional removal of head covering regardless of an individual's sincerely-held religious belief.

28. Defendant LaJoye-Young, in her role as Sheriff is primarily responsible for the adoption, implementation and enforcement of Sheriff's Office policies including the booking photograph policy at issue in this case.

### *Federal, State, and Local Governments Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs*

29. The Defendant's Photograph Policy contravenes national norms and practices. From the federal to the local level, government and law enforcement entities recognize the significant constitutional and statutory interests at play and permit those in custody to wear religious head coverings for the purpose of official photographs.

30. The United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings on in official passport photographs. The Department of State website allows those being photographed to wear a religious hat or head covering if they "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn continuously in public.

31. Similarly, the United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum on July 23, 2012 that permits religious head coverings to be worn in photographs. The memorandum states that "USCIS will accommodate an individual who wears headwear as part of their religious practices."  Should a head covering cast a shadow over the wearer's face or otherwise obscure part of their face, USCIS will "ask individual to remove or adjust portions of religious headwear that covers all or part of individual's face." In this situation, USCIS will offer the wearer a private room or screened area in which to adjust their head covering as well as a photographer of their gender. The religious head covering in question "is allowed to cover the ears if USCIS can still identify the individual."

32. The Michigan Vehicle Code, Sections 28.292 and 257.310 also permits an applicant for a driver's license to keep her hijab on while having her official driver's license photograph taken; as long as it does not touch the person's eyebrows.

33. The Dearborn Heights, Michigan, the Police Department changed its booking procedures in July 2015 after a woman was forced to remove her hijab in the presence of men during the booking photograph and while in custody. The Police Department implemented reform after that woman filed suit alleging violations of her religious rights. According to the updated policy, Muslim women are not required to remove religious head coverings like hijabs for any booking photographs.

At least one additional lawsuit has been settled under the new policy, which recognizes the substantial religious interests of women who wear hijabs.

34. In a lawsuit against the City of Dearborn Heights, the 6th Circuit upheld the policy because of the clear privacy and religious right of the Muslim women has in religious practice. The 6th Circuit found that the releasing the booking photograph of a Muslim woman without her hijab would be a clear unwarranted invasion of the woman's privacy. The booking photograph without religious head covering would not be made available to the public because it would violate the establishment clause of the First Amendment.

35. Law enforcement officials across the country have likewise recognized the right of citizens to wear hijabs or other religious head coverings while being photographed for official government purposes.

36. In Long Beach, California, the City Council approved a July 2017 settlement between a woman required to remove her hijab for a post-arrest photograph and the Long Beach Police Department that amended the Department's official policy so as to accommodate persons who wear religious head coverings. The Department is no longer permitted to forcibly remove the hijabs of female arrestees at any point while they are in custody.

37. In amending its policy, Long Beach joined two neighboring jurisdictions, San Bernardino County and Orange County, which adopted policies protecting detainees

who wear religious head coverings following lawsuits that settled in 2008 and 2013 respectively.

38. In Hennepin County, Minnesota — the county that includes Minneapolis — the Sheriff's Office implemented a new policy for inmates at the Hennepin County Jail and those in custody throughout Hennepin County in March 2014. The policy permits female arrestees to keep their hijabs on while a booking photograph is taken and provides that the hijab can be pushed back slightly off of the wearer's face if necessary. Inmates at the County Jail are permitted to wear hijabs while incarcerated.

39. In Portland, Maine, Cumberland County Sheriff Kevin Joyce publicly apologized after releasing the booking photographs of two Muslim women who had been arrested at a Black Lives Matter protest. The photographs showed each woman without her hijab; Joyce offered his "sincerest apologies…to the Muslim community for the appearance that we are disrespecting their religious beliefs and practices." The Cumberland County Jail procedures require a woman to remove her hijab only in private, without men present, and provide that two booking photographs will be taken, one with the woman's hijab and another without.

40. The Michigan Department of Corrections, in their operation of the Detroit Detention Center in conjunction with the City of Detroit Police Department in 2022 abolished their policy requiring arrestees to remove their religious head coverings

for booking photographs and allows to Muslim women to wear their hijab in all photographs taken pursuant to arrest.

41. Also in 2022, the City of Ferndale, and Genessee County Jail abolished their policies requiring that women remove their hijab for booking photos and allow that all religious head coverings be permitted in booking photographs, even those that are uploaded to the Michigan State Police Department's database.

42. Each of these examples reflects a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs.

43. Even the New York Police Department has recognized the harm its Photograph Policy may cause Muslim women. Three Muslim women reached a settlement with the City on February 26, 2018, pursuant to which the City agreed to pay $180,000 in damages for the forced removal of the women's hijabs pursuant to the Photograph Policy.  Upon information and belief, however, the Photograph Policy remains in place despite this settlement. Even if a Muslim woman is able to have her Booking Photograph taken in private by another woman at One Police Plaza, the Booking Photograph itself remains in the NYPD's database indefinitely — available to all who access the computer system or the woman's paper file.

44. The Kent County Sheriff's Unlawful Photograph Policy Forces Muslim Women to Violate their sincerely held religious beliefs.

45. Federal legislation has been enacted to demonstrate our robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interest in practices like covering, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by … the Constitution." 42 U.S.C. § 2000cc-3(g). The statute even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." Id. § 2000cc-3(c).

46. In contravention of this legislation and the tolerant, inclusive policies it embodies, the Defendants' Photograph Policy pattern and practice has had an extensive and corrosive effect of Muslim-American women who reside, travel and work within Kent County—and, upon information and belief, on other Kent County residents who wear religious head coverings and are arrested or housed by Kent County Sheriff's Office.

47. Moreover, the Photograph Policy is a profound manifestation of insensitivity towards religious practices and interests. In today's post-9/11 climate, there is widespread hostility towards and baseless fear of Muslim-Americans. In the context of this increasingly polarized setting, it is incumbent on this City's law enforcement to increase awareness of and sensitivity towards the Muslim-American community

by setting an example in their arrest and booking practices. The Photograph Policy pattern and practice has precisely the opposite effect.

48. The Defendants' Photograph Policy pattern and practice substantially impacts the citizens of Defendant Detroit. The Photograph Policy custom is to force Muslim-women to forcibly remove their hijabs for the Booking Photograph while in custody and that the Photograph Policy pattern and practice had violated their constitutional and statutory rights.

49. In addition, Booking Photographs are integrated into other law enforcement databases. Due to this practice, the integration increases the likelihood that images of arrestees without their religious head coverings will be viewed by many people long after the Booking Photograph is taken.

***Plaintiff, Jannah Hague is Subjected to Defendant's Unlawful Photograph Policy***

50. Ms. Hague was forced to remove her hijab for a booking photograph taken at the Kent County Jail, by employees of Kent County Sheriff's Office pursuant to a pattern and practice of Kent County Sheriff's Office as enforced and implemented by Kent County Sheriff- Michelle LaJoye-Young.

51. Ms. Hague was subjected to having two (2) male guards in the same room within her sight at the time she had her hijab removed for a booking photograph pursuant to the policy, pattern and practice of Kent County Sheriff's Office under

the supervision, direction, enforcement and implementation of Kent County Sheriff-Michelle LaJoye-Young.

***Plaintiff Jannah Hague is Forced to Remove Her Hijab for a Booking Photograph at Kent County Jail***

52. On April 8, 2023, Ms. Hague and her husband were involved in a domestic dispute in which the police were called and both Ms. Hague and her husband were arrested by the Kent County Sheriff's Office.

53. Subsequent to her arrest, Ms. Hague was taken to the Kent County Jail and processed in pursuant to her arrest.

54. While in the Kent County Jail, Ms. Hague was told that she had no choice but to remove her hijab so a booking photograph could be taken. She was told further told that the officer understood that she wore her hijab due to her sincerely held religious beliefs.

55. Ms. Hague complied with removing her hijab for a booking photograph because she felt she had no choice and no authority in the matter to protest due to being under arrest and having several law enforcement officers present. She feared that refusing to remove her hijab would result in punishment and physical force by the officers in an effort to remove her hijab.

56. Ms. Hague was forced to remove her hijab while two (2) male officers remained in the room, in and within her view, for the duration of the time her hijab was removed for a booking photograph.

15

57. Ms. Hague had a second photograph taken by Kent County Sheriff's officers wherein she was allowed to keep her hijab in place.

58. Despite having an image of Ms. Hague in her hijab, Kent County Sheriff's office released an image of Ms. Hague without her hijab on their publicly accessible website where they publish images of individuals in their custody.

59. As a result of having her hijabless image released, Ms. Hague's family and non-family members were able to access the image with a mere search of her name.

60. Pursuant to the Sheriff's Office policy and procedures, Ms. Hague's hijabless photo was uploaded to the Michigan State Police Database. Upon information and belief, Ms. Hague's hijabless photo remains in that database.

61. Like many Muslim women whose religious beliefs dictate that they wear a hijab, Ms. Hague felt exposed and violated without hers. It is as if Ms. Hague was naked in a public space.

62. Ms. Hague endured insurmountable amount of humiliation and trauma as a direct result of the Defendants' pattern and practice. This policy is unnecessarily discriminatory and the existence of Ms. Hague's booking photograph and the fact that it can be viewed again and again by men who are not members of her immediate family is haunting.

63. Ms. Hague was ultimately released without charge.

16

## FIRST CAUSE OF ACTION
### The Religious Land Use and Institutionalized Persons Act
### (42 U.S.C. § 2000cc)
### (As To All Entity Defendants and Individual Defendants in Her Official and Individual Capacity)

64. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

65. The RLUIPA provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

66. Plaintiff is a "person" as defined under the RLUIPA. See 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

67. Plaintiff's decision to wear hijabs constitute a sincerely held religious belief.

68. At all relevant times, Defendants met the definition of "government" under RLUIPA. See 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

69. At all relevant times, the locations where the Kent County Sheriff's Office take Booking Photographs, including, but not limited to, Kent County Jail, where the event alleged in this complaint transpired, are federally-funded "institutions" as

defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

70. At all relevant times, Plaintiff was "residing in or confined to institutions" as defined under the RLUIPA when the events alleged above transpired.

71. The Defendants' acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring them to remove her hijab to be photographed while she was residing in or confined in Kent County Jail.

72. Defendants' acts and omissions that  violate Ms. Hague's legal rights when Kent County Sheriff's Office employees:

   a. Required the removal of Ms. Hague's hijab for the purpose of capturing a booking photo;

   b. Released that photo to the internet where it was available to the public;

   c. Disseminated the hijabless booking photo to other law enforcement databases, including the Michigan State Police Database;

   d. Required Ms. Hague to remove her hijab with male officers within view of Ms. Hague

73. The Defendants' acts or omissions, policies and customs substantially burdened Plaintiffs' religious exercise by creating a permanent public record her image without her hijab which has been and can continue to be released to the public without intervention of the Court.

18

74. Defendants' acts, omissions, policies and customs substantially burden Plaintiff's religious exercise by requiring Ms. Chaaban to wear the offending picture and the act of male guards observing her hijabless photo while she was residing in or confined in Kent County Jail.

75. Defendant, Sheriff Michelle LaJoye-Young in their official role is substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo in violation of Ms. Hague's sincerely held religious beliefs.

76. The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendant, Sheriff LaJoye-Young had actual knowledge that the actions, and the booking photo policy requiring the hijab to be removed, were in violation of Ms. Hague's sincerely held religious beliefs in violation of the U.S. Constitution and RLUIPA.

77. Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

78. Defendants acts or omissions, polices, and customs are not the least-restrictive means of furthering a compelling government interest.

79. As a direct proximate result of Defendants wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## SECOND CAUSE OF ACTION
### Free Exercise Clause
### (42 U.S.C. § 1983)

**(As To All Entity Defendants and Individual Defendant in Her Official and Individual Capacity)**

80. Plaintiff repeats and alleges the above paragraphs as if the same were fully set forth at length herein.

81. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

82. At all relevant times, all named Defendants acted under color of state law.

83. Under the First Amendment to the Constitution of the United States of America, Plaintiff has the right to freely exercise their religion.

84. By forcing Plaintiff to remove her hijab for the Booking Photograph, Defendants Kent County and Kent County Sheriff's Office deprived Plaintiff of her right to freely exercise her religion in contravention of the Free Exercise Clause.

85. photographed while she was residing in or confined in Kent County Jail.

86. Defendants' violated Ms. Hague's First Amendment rights when Kent County Sheriff's Office employees:

   a. Required the removal of Ms. Hague's hijab for the purpose of capturing a booking photo;

   b. Released that photo to the internet where it was available to the public;

    c. Disseminated the hijabless booking photo to other law enforcement databases, including the Michigan State Police Database;

    d. Required Ms. Hague to remove her hijab with male officers within view of Ms. Hague

87. Defendant, Sheriff LaJoye-Young, in her official role is substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo and policies in violation of Ms. Hague's sincerely held religious beliefs.

88. The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendant, Sheriff LaJoye-Young had actual knowledge that their actions, and the booking photo policy requiring the hijab to be removed, were in violation of Ms. Chaaban's sincerely held religious beliefs.

89. Defendants acts or omissions, policies, and customs do not further a compelling government interest.

90. As a direct and proximate result of all named Defendants unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**THIRD CAUSE OF ACTOIN**
**Michigan State Constitution**
**(Article 1, Section 4)**

**(As To All Entity Defendants and Individual Defendants in Their Official and Individual Capacity)**

91. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

92. Article 1, Section 4 of the Constitution of the State of Michigan provides that: "Every person shall be at liberty to worship God according to the dictates of his own conscience."

93. Defendant Kent County and Kent County Sheriff's Office policy requiring that arrestees who wear religious head coverings remove those head coverings to be photographed violates Article 1, Section 4 by disallowing the free exercise of religion.

94. Defendant, Sheriff Michelle LaJoye-Young in her official role is substantially and primarily responsible for the adoption, enactment, and enforcement of the illegal and unconstitutional booking photo and wristband policies in violation of Ms. Hague's sincerely held religious beliefs.

95. The wearing of the hijab is so common place and universally understood as a religious practice of Muslim women that Defendant LaJoye-Young had actual knowledge that her actions, and the booking photo policies were in violation of Ms. Hague's sincerely held religious beliefs in violation of the Michigan Constitution.

96. Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

22

97. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has sustained damages and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## FOURTH CAUSE OF ACTOIN
### Declaratory Judgment
### (Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02)
### (As to Entity Defendants and Individual Defendants in Their Official Capacity)

98. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

99. Defendants' conduct was intentional and made with reckless indifference to Plaintiffs' religious rights.

100.     Plaintiffs' rights to the free exercise of religion were infringed upon and substantially burdened by Defendants' conduct.

101.     Defendants' policy and custom of forcing the removal of religious head coverings for post-arrest photographs, including the hijab worn by Ms. Hague, is an unlawful and unconstitutional practice that infringes upon the rights of Plaintiff and other Muslim women and religious adherents to freely exercise their religion without the interference of substantially burdensome government conduct.

102.     Defendants' policy, pattern and practices violate the rights of Plaintiff and other Muslim women and religious adherents to freely exercise their religious without interference of substantially burdensome government  when they:

103.     photographed while she was residing in or confined in Kent County

Jail.

104.     Defendants' acts and omissions that  violate Ms. Hague's legal rights

when Kent County Sheriff's Office employees:

     a.  Require the removal of a woman's hijab for the purpose of capturing a

        booking photo;

     b.  Release that photo to the internet where it was available to the public;

     c.  Disseminated the hijabless booking photo to other law enforcement

        databases, including the Michigan State Police Database;

     d.  Require Muslim women to remove thier hijab with male officers within

        view.

105.     Defendants policy, practice, and custom caused and continue to cause

Plaintiff and other Muslim Women and religious adherents harm.

106.     Defendant, Sheriff LaJoye-Young, in their official role is substantially

and primarily responsible for the adoption, enactment, and enforcement of the illegal

and unconstitutional booking photo policy in violation of Ms. Hague's and other

Muslim women's sincerely held religious beliefs.

107.     The wearing of the hijab is so common place and universally

understood as a religious practice of Muslim women that Defendant LaJoye-Young

had actual knowledge that their actions, and the booking photo policy requiring the

hijab to be removed,  were in violation of Ms. Hague's sincerely held religious beliefs  in violation of the U.S. Constitution and RLUIPA.

108.     Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

109.     Plaintiff is entitled to a declaratory judgment that Defendants  infringed upon and substantially burdened Plaintiffs religious free exercise and continue to substantially burden the religious free exercise of other, similarly-situated Muslim women and religious adherents in violation of federal and state law and the United States Constitution.

110.     Plaintiff has a strong likelihood of succeeding on the merits of their claims.

## FIFTH CAUSE OF ACTION
### Gross Negligence
**(As to Entity Defendants and Individual Defendants in Their Official Capacity)**

111.     Plaintiff realleges and incorporates by reference each and every previously pled paragraph as though it were laid forth herein.

112.     Defendants had a duty to perform their employment activities so as not to endanger or harm Plaintiffs.

113.     However, Defendants breached that duty by acting indifferently or grossly negligent without regard to Plaintiffs' rights and mental well-being.

114.     Defendants knew or should have known that by breaching these duties, harm would come to Plaintiff.

115.     That according to MCL 691.1407(2), the breach of Defendants' duty to exercise reasonable care was reckless and amounts to gross negligence.

116.     That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Plaintiff suffered damages.

### SIXTH CAUSE OF ACTION
### Constitutional Violations- Negligence
### (As to Entity Defendants and Individual Defendants in Their Official Capacity)

117.     Plaintiff realleges and incorporates by reference each and every previously pled paragraph as if fully laid forth herein.

118.     Defendants acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in constitutional violations of Plaintiff.

119.     These customs, policies, and/or practices included but were not limited to the following:

   a.  Failing to train and/or supervise its officers so as to prevent violations of citizens' constitutional rights;

   b.  Failing to supervise, review, and/or discipline officers;

   c.  Failing to supervise, review and/or discipline officer whom the City of Detroit knew or should have known were violating or prone to violate

citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct;

d.  Failing to control and/or discipline police officers known to harass, intimidate or abuse citizens;

e.  Failing to control and/or discipline police officers known for racial and religiously profiling citizens in a manner that is unconstitutional and violates citizens' rights;

f.  Failing to train and/or supervise police officers regarding legal execution of searches and/or seizures;

g.  Failing to train and/or supervise its police officers regarding the use of excessive force;

h.  Having a custom, policy, and/or practice of falsely arresting and/or illegally detaining citizens.

120.   Defendants conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

121.   Defendants deliberately indifferent acts and/or omissions were the direct and proximate cause of Plaintiffs' injuries and damages.

122.   Plaintiff has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. §1983, together with costs and attorney fees pursuant to 42 U.S.C. §1988.

**WHEREFORE**, Plaintiff respectfully requests    judgment against DEFENDANTS as follows:

a) Declaring that Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc et seq.; the Free Exercise Clause of the First Amendment to the United States Constitution; and Article 1, Section 3 of the MI CONST;

b) Enjoining all named Defendants, Defendants agents, employees, and successors, and all other person in active concert or participation with Defendant from requiring the removal of any religious head or hair coverings for the purpose of post-arrest photographs;

c) Requiring Defendants to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

d) Permanently enjoin all Defendants from ever again disseminating Ms. Hague's hijabless booking photo to any member of the public or other governmental agency;

e) Order that Kent County and Kent County Sheriff's Office permanently remove Ms. Hague's hijabless booking photo from the public record and their own internal records to ensure that the photo

will never again be viewed by men whether members of the public or are agents and employees of Defendants;

f) Awarding such damages to Plaintiff as will fully compensate her for the loss of rights and emotional distress suffered due to Defendants' unlawful conduct;

g) Awarding punitive damages to Plaintiff;

h) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

i) Granting Plaintiff such other further relief as may be just and proper.

Dated: January 3, 2024                         Respectfully Submitted,

                                               CAIR-MI LEGAL FUND


                                               /s/Amy V. Doukoure

                                               By: Amy V. Doukoure (P80641)
                                               Attorney for Plaintiff
                                               1905 S. Haggerty Rd. Suite 105
                                               Canton, MI 48188