UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANNAH HAGUE,

      Plaintiff,

                                       Case No. 1:24-cv-9

v.

                                       Hon. Hala Y. Jarbou

KENT COUNTY, et al.,

      Defendants.

_____/

## OPINION

Plaintiff Jannah Hague brings this civil rights action against Kent County, the Kent County Sheriff's Office, and Kent County Sheriff Michelle LaJoye-Young.  Before the Court is Defendants' motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 10).  For the reasons herein, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND

### A. Plaintiff's Allegations

According to the complaint, Hague and her husband were arrested on April 8, 2023, and taken to Kenty County Jail for processing.  (Compl. ¶¶ 52-53, ECF No. 1.)  Hague wears a hijab, i.e., a headscarf that covers her hair, ears, and neck, in accordance with her Muslim faith.  (*Id.* ¶ 16.)  In observance of her religious beliefs, she wears it whenever she is in the presence of men who are not part of her immediate family.  (*Id.* ¶ 17.)  Her faith dictates that men outside her immediate family should not see her uncovered hair, head, or neck.  (*Id.* ¶ 19.)

At the time of her arrest, the Kent County Sheriff's Office had a policy (enacted in April 2022) requiring detainees wearing religious head coverings to remove them for the purpose of

having their booking photograph taken.  (*Id.* ¶ 21.)  The sheriff's office would take two photographs:  one of the individual wearing the head covering and one without the head covering.  (*Id.* ¶ 22.)  The image with the head covering would be released to the public via the sheriff's public detainee website.  The image without the head covering would be held by the Kent County Sheriff's Office and uploaded to the Michigan State Police ("MSP") database where it would become a "public record" viewable by any MSP employee with access to the database.  (*Id.* ¶ 25.)  The image could also be disclosed to a member of the public pursuant to a FOIA request or to other law enforcement agencies.  The policy also allowed multiple officers to be present when the booking photographs were being taken, and it allowed officers to force the detainee to remove their head covering for the photograph.  (*Id.*)

At the jail, officers told Hague that she had to remove her hijab for a booking photograph and that she had no choice in the matter, even though the officers were aware that she was wearing it for religious reasons.  (*Id.* ¶ 54.)  Hague complied with the request to remove her hijab while two male officers were allegedly present in the same room.  (*Id.* ¶ 56.)  An officer took two booking photographs of Hague, one with her wearing her hijab and one without.

The Kent County Sheriff's Office subsequently published the photograph of Hague without her hijab on its publicly accessible website.  (*Id.* ¶ 58.)  In addition, that photograph was uploaded to the MSP database, where it allegedly remains.  (*Id.* ¶ 49.)

Hague was later released without charge.  She contends that requiring her to remove her hijab in the presence of men who were not part of her immediate family, and then disseminating the photograph of her without the hijab to the public and to the MSP database, violated her religious beliefs and her right to the free exercise of her religion.

**B. Plaintiff's Claims**

Based on the foregoing allegations, Hague asserts six enumerated causes of action in her complaint, which the Court will refer to as Counts I to VI. In Count I, she contends that Defendants violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., by imposing a substantial burden on her right to exercise her religion.

In Count II, she pursues a claim under 42 U.S.C. § 1983, contending that Defendants violated her First Amendment right to the free exercise of her religion.

In Count III, she contends that Defendants denied her the right to exercise her religion, in violation of Article 1, Section 4 of the Michigan Constitution.

In Count IV, she seeks declaratory relief against the sheriff's office, the county, and Defendant LaJoye-Young in her official capacity. In particular, Hague seeks a declaration that Defendants "infringed upon and substantially burdened [her] religious free exercise and continue to substantially burden the religious free exercise of other, similarly-situated Muslim women and religious adherents in violation of federal and state law and the United States Constitution." (Compl. ¶ 109.)

Count V asserts a claim for "gross negligence" against the sheriff's office, the county, and Defendant LaJoye-Young in her official capacity. (*Id.* at 25.)

Count VI, asserts that Defendants acted with recklessness or deliberate indifference by practicing or permitting policies that resulted in the violation of Hague's constitutional rights.

Defendants seek dismissal of all claims.

## II. LEGAL STANDARDS

**A. Rule 12(b)(6)**

A plaintiff's complaint must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss under Rule 12(b)(6) unless the Court converts the motion to one for summary judgment. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted).

**B. Rule 12(b)(1)**

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction.  A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990).  Facial attacks are reviewed under the same standard as applied to a Rule 12(b)(6) motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject

matter jurisdiction exists based on the complaint.  *Id.*  No presumption of truth applies in a "factual

attack" on subject matter jurisdiction.  *Id.*

Factual attacks challenge the existence of jurisdiction based on facts outside the pleadings.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To resolve a

factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of

its power to hear the case. . . .  [T]he existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First*

*Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)).  The plaintiff bears the burden of

proof of jurisdiction when a factual attack is made.  *Id.*  And the Court has "broad discretion with

respect to what evidence to consider in deciding whether subject matter jurisdiction exists[.]"

*Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

## III. ANALYSIS

### A. Standing for Injunctive / Declaratory Relief

Defendants argue that Hague lacks standing to pursue injunctive or declaratory relief.

"Standing ensures that the plaintiff has a 'personal stake in the outcome of the controversy' at the

outset of litigation."  *Williams v. City of Cleveland*, 907 F.3d 924, 933 (6th Cir. 2018) (quoting

*Baker v. Carr*, 369 U.S. 186, 204 (1962)).  "Importantly, plaintiffs must establish standing for each

form of relief they seek, and the type of harm alleged impacts the available relief."  *Simpson-Vlach*

*v. Mich. Dep't of Educ.*, No. 22-1724, 2023 WL 3347497, at *4 (6th Cir. May 10, 2023).  The

requirements necessary to obtain standing for damages relief are different from those necessary to

obtain standing for injunctive or declaratory relief.

> Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to
> seek injunctive or declaratory relief.  This is because the fact that a harm occurred
> in the past "does nothing to establish a real and immediate threat that" it will occur
> in the future, as is required for injunctive relief.  Obtaining standing for declaratory
> relief has the same requirements as obtaining standing for injunctive relief.

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (internal citation omitted)). To obtain standing for declaratory or injunctive relief, Plaintiff "must plead either a future injury that is 'certainly impending' or presents a 'substantial risk' of occurrence, or a past injury that presents 'continuing, present adverse effects[.]'" *Simpson-Vlach*, 2023 WL 3347497, at *4 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (internal citations omitted)).

On its face at least, Hague's complaint satisfies the requirements for standing to obtain declaratory or injunctive relief because she alleges a past injury with continuing adverse effects. She alleges that the photograph of her wearing her hijab remains in the MSP database, without restrictions on access. Thus, there is a substantial risk that, due to Defendants' photograph policy, she will suffer further injury from other men outside her family seeing that photograph.

Defendants contend that Hague lacks standing because she was no longer detained when she filed her lawsuit. True, there are many cases in which a prisoner challenging the conditions of their confinement at a particular facility loses the ability to seek declaratory or injunctive relief regarding those conditions after the prisoner leaves that facility. *See, e.g.*, *Heyward v. Cooper*, 88 F.4th 648, 656-57 (6th Cir. 2023) ("[A]ny declaratory or injunctive relief that Heyward seeks is mooted by his transfer to a different prison facility."). But here, Hague's release from detention does not alter the impact of Defendants' possession of her photograph, which allegedly causes ongoing adverse effects, or at least a substantial risk of future injury should others access the photograph. Injunctive relief requiring them to destroy the photograph would address that issue. Thus, the foregoing cases do not apply.

Defendants also provide a sworn declaration from the Kent County Sheriff's Office's Chief Deputy of the Division of Corrections, asserting that Kent County has revised its policy so that arrestees are no longer required to remove "religious headgear" if the photograph otherwise complies with Michigan law.  (Cole Decl. ¶ 10, ECF No. 11-1.)  In addition, the Kent County Sheriff's Department purportedly "took steps" to remove the photograph of Hague from its database and the MSP's database.  (*Id.* ¶ 9.)  However, that declaration does not indicate *when* Defendants made the policy change or *when* they purportedly removed the offending photograph from county and state databases.[1]

The relevant point in time for assessing standing is the date Hague filed her complaint.  *See Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) ("[S]tanding applies at the sound of the starting gun, and mootness picks up the baton from there."); *Cleveland Branch, NAACP v. City of Pharma*, 263 F.3d 513, 526 n.11 (6th Cir. 2001) ("[S]tanding concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring *at the time the complaint was filed*,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation.") (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (citation omitted, emphasis added)).  Defendants do not expressly argue or demonstrate that they changed the policy and deleted Hague's photograph from their databases *before* Hague filed her complaint.  Instead, they contend that Kent County changed its policy "around the same time that Plaintiff filed her suit" and that "[e]ven if the change occurred *after* the suit was filed, the request for declaratory and injunctive relief would still be moot."  (Defs.' Br. in Supp. of Mot. to Dismiss 10 n.1, ECF No. 11 (emphasis added).)  Defendants' vague assertions about the timing of their conduct leave the Court to guess whether standing is truly at

---

[1] In addition, at oral argument, Defendants' counsel could not provide specific dates.

issue.  If they did not change their policy and delete Hague's photograph until *after* she filed her complaint, then she has standing to seek prospective relief.  At a minimum, she has standing to seek an injunction requiring Defendants to delete the offending photograph.

On the other hand, the Court agrees with Defendants that, if in fact they deleted the photograph before Hague filed her complaint, and even if the policy had not changed, then the only basis for pursuing injunctive relief would be the risk that she would be arrested again sometime in the future and subjected to the same booking procedure.  That risk is not sufficiently "real and immediate" to establish standing because the Court "must assume that plaintiff 'will conduct [her] activities within the law and so avoid . . . exposure to the challenged course of conduct.'"  *Sumpter*, 868 F.3d at 491 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494, 497 (1974)).  In other words, the Court must assume that Hague will follow the law and avoid arrest.

Hague argues that Defendants cannot "automatically moot a case" by voluntarily ceasing their conduct, citing *FBI v. Fikre*, 601 U.S. 234, 241 (2024).  She is correct, but mootness is not the same as standing.  "Standing and mootness, albeit related, are distinct doctrines with separate tests to evaluate their existence at different times of the litigation."  *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021).  In fact, the Supreme Court in *Fikre* stated that a defendant cannot moot a case by ceasing its challenged conduct "*after* it is sued."  *Fikre*, 601 U.S. at 241 (emphasis added).  That rationale does not apply to the question of standing, which is assessed at the time the defendant is sued, not after.

In short, based on the record at this stage, the Court is not persuaded that Hague lacks standing to pursue declaratory or injunctive relief.  When she filed her complaint, she may have had standing to require Defendants to delete her photograph without the hijab.  Defendants are correct in suggesting that their conduct may have mooted Hague's requests for declaratory or

injunctive relief, but that is a separate question that they do not advance in their motion.  Indeed, Defendants contend that they "are *not* moving to dismiss the claims for injunctive and declaratory relief on the grounds that Plaintiff's claims are 'moot.'"  (Defs.' Reply Br. 1, ECF No. 21 (emphasis added).)  That being the case, the Court will not decide the question of mootness at this time.

**B. Count I:  RLUIPA**

Hague asserts a claim under RLUIPA, which prohibits the government from "impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that the imposition of the burden . . . (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling interest."  42 U.S.C. § 2000cc-1(a).  RLUIPA permits "a person . . . assert[ing] a violation of this chapter in a claim or defense in a judicial proceeding [to] obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  The term "government" means "a State, county, municipality, or other governmental entity created under the authority of a State" or "any branch, department, agency, instrumentality, or official of an entity[.]"  42 U.S.C. § 2000cc-5(4).  It also includes "any other person acting under color of State law[.]"  *Id.*

**1. Damages**

Defendants argue that Hague is not entitled to damages against them under RLUIPA.  In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Court of Appeals noted that Congress enacted RLUIPA through its "spending power," and that Congress "must speak with clarity" about the availability of money-damages remedies when it legislates through that power.  *Id.* at 568-69.  The phrase "appropriate relief" in RLUIPA does not satisfy this clear-statement rule, so it does not permit money damages as a remedy.  *Id.* at 569.

Hague responds that *Haight* relied upon sovereign immunity analysis from *Sossamon v. Texas*, 563 U.S. 277 (2011), in which the Supreme Court held that damages are not available under RLUIPA when a plaintiff is suing state officials in their official capacities because such claims are subject to sovereign immunity and RLUIPA does not clearly and unambiguously waive sovereign immunity. *Id.* at 285-86. Here, Hague sues municipal entities and a municipal employee who are not entitled to sovereign immunity. Thus, Hague argues that *Sossamon* and *Haight* do not apply.

Hague is mistaken. The majority in *Haight* expressly stated that the "clear-statement rule" applies "*whenever* Congress legislates through the spending power, whether related to waivers of sovereign immunity or not." *Haight*, 763 F.3d at 568 (emphasis in original). Indeed, the defendants in *Haight*, like Defendants here, were not entitled to sovereign immunity. They were state officials sued in their individual capacities. *See id.* at 561. Nevertheless, the Court of Appeals applied the clear-statement rule and held that RLUIPA does not permit a damages remedy against them. *Id.* at 569. Thus, *Haight* does not depend upon sovereign immunity analysis for its outcome.

Hague notes that *Haight* is distinguishable in that it did not involve municipal entities or employees of such an entity. However, that distinction makes no difference to the outcome here. The holding in *Haight* logically extends to Defendants. As noted in *Haight*, the clear-statement rule applies even when the defendant is "not a State." *Id.* at 569. Furthermore, the Court of Appeals has applied *Haight* to municipal entities and officials. *See Pleasant-Bey v. Shelby Cnty.*, No. 18-6063, 2019 WL 11769343, at *3 (6th Cir. Nov. 7, 2019) (dismissing damages claim against municipal entities and officials because RLUIPA "simply does not permit claims for money damages").

Hague also argues that a recent Supreme Court decision, *Tanzin v. Tanvir*, 592 U.S. 43 (2020), modified *Sossamon* and undercut the Court of Appeals' decision in *Haight*. In *Tanzin*, the

Supreme Court held that the phrase "appropriate relief" in the Religious Freedom Restoration Act of 1993 (RFRA) includes a right to seek damages against government employees. *Tanzin*, 592 U.S. at 51. However, that court did not apply the clear-statement analysis used by the Court of Appeals in *Haight*, so *Tanzin* does not overrule or abrogate *Haight*, "which remains controlling authority in this circuit." *Mease v. Washington*, No. 2:20-cv-176, 2021 WL 1921071, at *16 (W.D. Mich. May 13, 2021).

Finally, Hague argues that the Court of Appeals has *implied* that RLUIPA permits a claim for money damages. In *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357 (6th Cir. 2019), the Court of Appeals held that the plaintiff had not "abandoned" its money-damages claim under RLUIPA. *Id.* at 366. But the court did not discuss *Haight* or any other case law discussing the right to damages under RLUIPA. Consequently, *Haight* controls. *See Eidam v. Cnty. of Berrien*, No. 1:19-cv-978, 2019 WL 7343354, at *8 n.2 (W.D. Mich. Dec. 31, 2019) (reaching the same conclusion). In short, Hague is not entitled to money damages from Defendants under RLUIPA.

### 2. Merits

Defendants argue that Hague does not state a RLUIPA claim because their policy did not impose a substantial burden on the exercise of her religion. "[T]he Government substantially burdens an exercise of religion when it 'places substantial pressure on an adherent to modify [her] behavior and to violate [her] beliefs or effectively bars [her] sincere faith-based conduct.'" *Fox v. Washington*, 949 F.3d 270, 278 (6th Cir. 2020) (quoting *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 589 (6th Cir. 2018)). Defendants do not argue this point in any depth, however. Ironically, Defendants cite *Al-Kadi v. Ramsey County*, No. 16-2642 (JRT/TNL), 2019 WL 2448648 (D. Minn. June 12, 2019), in which a district court held that requiring a Muslim woman to temporarily remove her hijab for the sake of a booking photo *could* constitute a substantial

11

burden under RLUIPA.  *Id.* at \*10; *see also Khatib v. Orange Cnty.*, 639 F.3d 898, 907 (9th Cir. 2011) (Gould, J., concurring) ("A Muslim woman who must appear before strange men she doesn't know, with her hair and neck uncovered in a violation of her religious beliefs, may feel shame and distress. This is precisely the kind of 'mischief' RLUIPA was intended to remedy.").  Thus, Defendants' argument is not persuasive.

### 3. Qualified Immunity

Defendants contend that LaJoye-Young is entitled to qualified immunity for Hague's RLUIPA claim.  Importantly, "'qualified immunity only immunizes defendants from monetary damages'—not injunctive or declaratory relief." *Kanuszewski*, 927 F.3d at 417 (quoting *Williams v. Kentucky*, 24 F.3d 1526, 1541 (6th Cir. 1994)).  The Court has already determined that RLUIPA does not permit a claim for damages under existing precedent.  Should that precedent change, however, the Court agrees that LaJoye-Young would be entitled to qualified immunity for damages asserted under the RLUIPA claim.

Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Guertin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  It "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Hague bears the burden of overcoming the defense of qualified immunity, even at the motion to dismiss stage.  *See Kerchen v. Univ. of Mich.*, 100 F.4th 751, 763 (6th Cir. 2024).  To do so, she must show "(1) that [Defendant] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735

(internal quotation marks omitted).  "[C]ourts have discretion to decide which of the two prongs

of qualified-immunity analysis to tackle first."  *Id.*

> To be clearly established, a legal principle must have a sufficiently clear foundation
> in then-existing precedent.  The rule must be settled law, which means it is dictated
> by controlling authority or a robust consensus of cases of persuasive authority.  It
> is not enough that the rule is suggested by then-existing precedent.  The precedent
> must be clear enough that every reasonable official would interpret it to establish
> the particular rule the plaintiff seeks to apply.  Otherwise, the rule is not one that
> every reasonable official would know.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations and quotation marks omitted).  It

is not necessary for there to be "a case directly on point, but existing precedent must have placed

the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  "Of course,

there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently

clear even though existing precedent does not address similar circumstances."  *Wesby*, 583 U.S. at

64 (quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly
> prohibit the officer's conduct *in the particular circumstances before him*.  The
> rule's contours must be so well defined that it is clear to a reasonable officer that
> his conduct was unlawful in the situation he confronted.  This requires a high degree
> of specificity.  We have repeatedly stressed that courts must not define clearly
> established law at a high level of generality, since doing so avoids the crucial
> question whether the official acted reasonably in the particular circumstances that
> he or she faced.  A rule is too general if the unlawfulness of the officer's conduct
> does not follow immediately from the conclusion that the rule was firmly
> established.

*Id.* at 63-64 (citations and quotation marks omitted; emphasis added).

"Notice to officials is paramount; 'the salient question' in evaluating the clearly established

prong is whether officials had 'fair warning' that their conduct was [unlawful]."  *Guertin*, 912 F.3d

at 932 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  When addressing the clearly

established standard, Hague's burden includes "pointing to legal authority that clearly shows that

the constitutional [or statutory] question . . . should be resolved in [her] favor."  *Linden v. City of Southfield*, 75 F.4th 597, 604 (6th Cir. 2023).

Hague has not satisfied her burden.  She provides no legal authority clearly showing that Defendants' policy was unlawful under RLUIPA.  Accordingly, if RLUIPA permitted a claim for damages, LaJoye-Young would be entitled to qualified immunity for such a claim.  As discussed above, however, that immunity does not rule out the possibility of declaratory or injunctive relief against LaJoye-Young.

### C. Count II:  First Amendment

The Court construes Hague's First Amendment claim as having two parts: (1) requiring her to remove her hijab in front of male officers in order to take the booking photograph; and (2) disseminating that photograph to the MSP and the public.

#### 1. Removal of Hijab

Defendants argue that Hague does not state a First Amendment claim regarding the removal of her hijab for the booking photograph because its two-photograph policy was lawful.  "[A] regulation impinging upon a detainee's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'"  *Williams v. City of Cleveland*, 771 F.3d 945, 949-50 (6th Cir. 2014) (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012)).

The Supreme Court "has identified four factors to aid in making" a determination about whether a policy or rule is reasonably related to legitimate penological interests.  *Pleasant-Bey v. Shelby Cnty.*, No. 20-5908, 2021 WL 11097076, at *2 (6th Cir. Aug. 20, 2021) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  "First 'there must be a valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it."  *Id.* (quoting *Turner*, 482 U.S. at 89).  Without this connection, the regulation is unconstitutional.  *Id.*  The

14

remaining three factors must be balanced together: "whether there are alternative means of exercising the right that remain open to prison inmates"; whether "'accommodation of the asserted constitutional right' will impact 'guards and other inmates' and 'the allocation of prison resources generally'"; and whether there are "ready alternatives" to the regulation "that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests."  *Id.* (quoting *Turner*, 482 U.S. at 90-91).

Defendants argue that a policy requiring detainees to remove a hijab for a booking photograph is reasonably related to an interest in obtaining a complete image that would allow officials to readily identify the detainee in the future.  Indeed, Michigan law requires law enforcement agencies who make arrests for certain crimes to collect "biometric data" from the arrestee.  Mich. Comp. Laws § 28.243.  That data includes fingerprints and palm prints, as well as photographs "recorded during the arrest or booking process, including a full-face capture, left and right profile, and scars, marks, and tattoos[.]"  Mich. Comp. Laws § 28.241a(b)(iii).

The Court agrees that collecting and keeping physically identifying information about an individual who has been arrested and detained is logically connected to a legitimate penological interest.  Law enforcement agencies must collect such information to keep an accurate record of the arrest and to track detainees throughout their detention.  A policy that requires collection of an image of the full facial profile and parts of the body concealed by a hijab (such as one's hair) furthers that interest.  After all, the shape and color of one's hair is a significant identifying feature. *See J.H. v. Bratton*, 248 F. Supp. 3d 401, 409 (E.D.N.Y. 2017) (finding that a policy "requiring arrestees to remove head coverings for post-arrest photographs" is "reasonably related to the City's obvious and legitimate interest in having a photographic record of arrestees from which a later identification can be made").

Defendants' analysis of Hague's First Amendment claim is incomplete, however.  Their brief does not address the remaining factors in *Turner*.  Defendants' reliance on *Bratton* is insufficient because that court did not apply the *Turner* test.  Instead, it applied a test for laws of "neutral and of general applicability" that derives from *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 972, 878-79 (1990).  *See Bratton*, 248 F. Supp. 3d at 409.  In this Circuit, however, the Court must apply the *Turner* factors.  *See Flagner v. Wilkinson*, 251 F.3d 475, 482 (6th Cir. 2001) ("[T]he proper standard to apply in prisoner cases challenging restrictions on the free exercise of religion is supplied by the Supreme Court's decision in *Turner*, not by [*Smith*].").

It is not the Court's responsibility to make Defendants' arguments for them, so the Court will not dismiss this aspect of the First Amendment claim for failure to state a claim.  Moreover, even if there is a legitimate penological interest in taking the photograph of Hague without a hijab, it is not clear that requiring her to do so in the presence of male officers was reasonably related to that interest.

### (a) Sheriff LaJoye-Young

Hague claims that LaJoye-Young is liable under § 1983 because she adopted the two-photograph policy.  Defendants argue that, even if that policy is unconstitutional, she is entitled to qualified immunity.  Assuming Hague has plausibly alleged a violation of her First Amendment rights, she provides no support for her argument that it was clearly established that law enforcement officials could not require the temporary removal of a religious head covering for the purpose of taking a booking photograph.  The cases she cites are not helpful.

For instance, in *Pleasant-Bey v. Shelby County Government*, No.  2:17-cv-02502-TLP-tmp, 2019 WL 5654993 (W.D. Tenn. Oct. 31, 2019), a district court noted that "the right to wear a kufi is *not* clearly established when defendants proffer a legitimate penological interest for that

16

restriction." *Id.* at *4  (emphasis added).  There, the defendants offered *no* penological interest for prohibiting the plaintiff wearing his religious head covering while detained in jail, so the court concluded they were not entitled to qualified immunity.  In contrast, Defendants here offer a legitimate penological interest in the creation of a booking photograph that captures a detainee's identifying features, including her hair.

Hague also cites *Moore v. Washington*, No. 19-CV-13616, 2020 WL 7294362, at *6 n.1 (E.D. Mich. July 15, 2020), report and recommendation adopted, No. 19-CV-13616, 2020 WL 6503652 (E.D. Mich. Nov. 5, 2020), in which a district court *denied* a preliminary injunction after finding that the plaintiff was *not* likely to succeed on his RLUIPA and First Amendment claims regarding a prison policy that limited his ability to wear a kufi while in prison.  *Id.* at *6.  Thus, neither *Pleasant-Bey* nor *Moore*, both of which are unpublished cases, would have made it clear to an official in Defendant's position that Kent County's policy was unconstitutional.

Hague argues that Defendant would have known that Hague had a constitutional right to wear her hijab.  Even so, that does not mean Defendant would have known that requiring Hague to temporarily remove the hijab in order to take a booking photo would violate her rights under the First Amendment.  Hague's First Amendment rights are not absolute.  In some circumstances, they must give way to legitimate penological interests.  It was not clearly established that Defendants' policy violated those rights.

In short, Hague has not met her burden of overcoming qualified immunity.  Consequently, La-Joye-Young is entitled to qualified immunity for Hague's First Amendment claim stemming from the requirement to remove her hijab, which means that Hague cannot obtain damages from LaJoye-Young for that incident under § 1983.

**(b) Municipal Entities: Kent County Sheriff's Office & Kent County**

As indicated above, the Court is not persuaded by Defendants' arguments regarding Hague's standing for injunctive relief, or regarding the validity of Hague's First Amendment claim. Accordingly, the Court will permit the First Amendment claim to proceed against Kent County and the Kent County Sheriff's Office regarding the requirement that Hague remove her hijab. And unlike Lajoye-Young, neither the county nor the sheriff's office can raise the defense of qualified immunity. *See Capen v. Saginaw Cnty.*, 103 F.4th 457, 462 (6th Cir. 2024) ("A municipality, in contrast to an individual government officer, is not protected by qualified immunity."). Also, the fact that the sheriff is entitled to qualified immunity does not mean that the sheriff's office or the county can avoid liability. *See Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023) ("Under the law of this circuit, a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity.") (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993)).

**2. Dissemination of Photograph**

The other aspect of Hague's First Amendment claim involves Defendants' dissemination of the photograph in which Hague is not wearing a hijab.

**(a) Sheriff LaJoye-Young**

Hague does not allege that LaJoye-Young was the one who disseminated Hague's photograph. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576. "[A] plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Instead, Hague alleges that LaJoye-Young created the policy requiring that the hijabless photograph be uploaded to the MSP database.  Hague asserts a possible claim against LaJoye-Young for this dissemination because she alleges that this practice is part of the policy.  (Compl. ¶ 60 ("Pursuant to the Sheriff's Office policy and procedures, Ms. Hague's hijabless photo was uploaded to the Michigan State Police Database. ").)  Defendants argue that dissemination to the MSP was *not* part of their policy, pointing to the Cole declaration.  For present purposes, however, the Court must accept Hague's allegations in the complaint as true.[2]  But insofar as Hague seeks damages for this claim, LaJoye-Young is entitled to qualified immunity for reasons similar to those discussed above.  Hague fails to identify any precedent that would have made it clear to LaJoye-Young that a policy requiring or allowing such dissemination was unconstitutional.

On the other hand, to the extent Hague brings a claim for *public* dissemination of the photograph without the hijab, she does not state a claim against LaJoye-Young.  Hague does not allege that the policy required or provided for such dissemination.  To the contrary, Hague alleges that this photograph was "intended to be held by the Kent County Sheriff's Office[.]"  (Compl. ¶ 24.)   In other words, Hague alleges no conduct by LaJoye-Young that resulted in this dissemination.

### (b) Kent County & Kent County Sheriff's Office

To state a claim against municipal entities like Kent County or the Kent County Sheriff's Office, a plaintiff must plead that the entity's "policy or custom" was the "moving force" behind

---

[2] Contrary to Defendants' assertion, an affidavit attached to their motion to dismiss is not a document that the Court can consider under Rule 12(b)(6).

the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  As indicated in the previous section, Hague does not allege that any policy was the cause of the *public* dissemination of her photograph without a hijab.  Thus, she does not state a § 1983 claim against Kent County or the Kent County Sheriff's Office with respect to that dissemination.  She does, however, state a possible First Amendment claim against the county and the sheriff's office with regard to actions taken pursuant to their policy, including requiring Hague to remove her hijab for a booking photograph and then sending that photograph to the state police.

### 3. Summary

In short, the Court will allow Hague's First Amendment and RLUIPA claims to proceed to the extent they seek declaratory or injunctive relief from Defendants (or damages from Kent County or the Kent County Sheriff's Office), and to the extent they involve requiring Hague to remove her hijab and then disseminating that photograph to the Michigan State Police in accordance with Defendants' policy.

### D. Count III: Michigan Constitution

Defendants note that there is no Michigan statute creating a private cause of action under the Michigan constitution.  Hague argues that the Michigan Constitution recognizes a right to religious liberty, but she does not counter Defendants' argument about the lack of a right to bring a private cause of action.  Indeed, the Michigan Supreme Court has held that a court can recognize a judicial damages remedy for a violation of the Michigan Constitution only in limited circumstances.  *See Bauserman v. Unemployment Ins. Agency*, 983 N.W.2d 855, 872 (Mich. 2022). But those circumstances do not apply to "an action against a municipality or an individual government employee."  *Jones v. Powell*, 612 N.W.2d 423, 426 (Mich. 2000); *see Bauserman*, 983 N.W.2d at 873 n.13 (declining to hold that municipalities or individual government employees can be liable for constitutional torts).  Thus, they do not apply here.

20

At any rate, to the extent Hague has a right to pursue a claim under the Michigan Constitution, the Court declines to exercise supplemental jurisdiction over that claim because it raises a "novel or complex issue of State law."  28 U.S.C. § 1367(c)(1).  Accordingly, the Court will dismiss Count III without prejudice.

### E. Count IV:  Declaratory Judgment

Count IV seeks a declaratory judgment that Defendants' conduct burdened her right to exercise her religion under the First Amendment and RLUIPA.  A declaratory judgment is a remedy, not a separate cause of action.  The Declaratory Judgment Act, 28 U.S.C. § 2201, "does not create an independent cause of action."  *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).  Thus, the Court will dismiss Count IV for failure to state a claim but will construe the relief requested therein as part of the relief sought by Hague for her federal claims.

### F.  Count V:  Gross Negligence

Hague claims that Defendants were grossly negligent in the performance of their duties, resulting in harm to her "rights and mental well-being."  (Compl. ¶ 113.)  Defendants argue that they are immune from such a claim under Michigan's Governmental Tort Liability Act (GTLA), Mich. Comp. Laws § 691.1407.  The latter provides that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  Mich. Comp. Laws § 691.1407(1).  The same immunity applies to a "high level executive official."  *Margaris v. Genesee Cnty.*, 919 N.W.2d 659, 663 (Mich. Ct. App. 2018) (citing Mich. Comp. Laws § 691.1407(5)).  Thus, a "county sheriff" like LaJoye-Young "is entitled to high-level governmental immunity."  *Id.*

Hague's response is somewhat confusing.  She contends that prison wardens are not high-level employees, so "Defendant Washington" is not entitled to immunity.  (Pl.'s Resp. Br. 24.)

21

This case does not involve a prison warden or a defendant named Washington.  It involves government agencies and a county sheriff, who is a high-level employee.

Hague also contends that governmental immunity does not apply to declaratory or injunctive relief, citing a concurring opinion in *Lash v. Traverse City*, 735 N.W.2d 628, 642-43 (Mich. 2007).  But Hague's complaint does not seek declaratory or injunctive relief for Count V.

Moreover, her citation to *Lash* does not support her argument.  Instead, the concurring opinion asserts that because governmental immunity "barred" the plaintiff's cause of action in that case, there was no need to determine whether the statute at issue created a private right of action. *Id.* at 639, 643.  That said, the majority opinion does suggest, in *dicta*, that a plaintiff could pursue declaratory or injunctive relief to enforce a statute even where such a claim was barred by governmental immunity.  *Id.* at 638.  But more recently, the Michigan Supreme Court suggested that a plaintiff could *not* seek injunctive relief on a claim from which the defendant was immune. *See Sunrise Resort Assoc., Inc. v. Cheboygan Cnty. Rd. Comm'n*, 999 N.W.2d 423, 427 (Mich. 2023) ("Because the plaintiffs only sought injunctive relief in connection with a claim from which the defendant is immune, we hold that the request for an injunction is invalid.").  In other words, the availability of declaratory or injunctive relief for Hague's gross negligence claim is unclear.

In short, Defendants are government agencies and a high-level government executive.  By creating or enforcing the policy at issue, they were involved in the exercise or discharge of a governmental function.  Accordingly, they are entitled to governmental immunity for Hague's gross negligence claim, meaning that this claim is "barred," at least insofar as it seeks damages. To the extent Hague contends she can seek declaratory or injunctive relief, the Court declines to exercise jurisdiction over her claim because the claim itself and the right to such relief for that claim raise novel and/or complex issues of state law.  *See* 28 U.S.C. § 1367(c)(1).

### G. Count VI: Constitutional Violations

Hague's final cause of action is titled "Constitutional Violations – Negligence." (Compl. 26.)   Therein, she contends that Defendants "acted recklessly and/or with deliberate indifference" when they permitted practices that "resulted in constitutional violations of Plaintiff." (*Id.* ¶ 118.)  The claim also refers to facts that are not relevant here, such as:  (1) failure to review or discipline an officer "whom the City of Detroit knew or should have known were violating or prone to violate citizens' constitutional rights"; failing to train or supervise officers "regarding legal execution of searches and/or seizures"; failing to train officers "regarding the use of excessive force"; and maintaining a policy of "falsely arresting and/or illegally detaining citizens."  (*Id.* ¶ 119.)  It is not clear what claim Hague is asserting here or what facts it is based on that are relevant to Hague's case.  Also, its assertions regarding a failure to train are wholly conclusory. Accordingly, the Court will dismiss it for failure to state a claim.

## IV. CONCLUSION

In summary, the Court will allow Counts I and II to proceed, in part.  Hague does not state a First Amendment claim against Defendants with respect to the distribution of her photograph to the public.  In addition, she is not entitled to any damages under RLUIPA.  Also, she is not entitled to damages under § 1983 against Defendant LaJoye-Young because LaJoye-Young is entitled to qualified immunity.  The Court will dismiss Counts III to VI without prejudice because they fail to state a claim and/or because the Court declines to exercise supplemental jurisdiction over them.

Dated: September 9, 2024                             /s/ Hala Y. Jarbou
                                                     HALA Y. JARBOU
                                                     CHIEF UNITED STATES DISTRICT JUDGE